**LIANA SEROBIAN, ESQ. CSB 235466**
**THE LAW OFFICES OF LIANA SEROBIAN**
100 North Brand Blvd., Suite 600
Glendale, CA 91203
T: (818) 539-2249; F (818) 539-2250
E: l.serobian@yahoo.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| Darlene Ferguson and Ryan K., individuals, | ) Case No. CV12- 06865 JAK (Ex) |
| Plaintiffs, | ) **COMPLAINT FOR DAMAGES** ) **PURSUANT TO 42 U.S.C §1983** |
| vs. | ) **COMPLAINT FOR DAMAGES** ) **PURSUANT TO CAL. CIV. CODE §52.1,** |
| COUNTY OF LOS ANGELES; MICHELE LOYA-CHHABRA, in her personal capacity; XIOMARA FLORES-HOLGUIN, in her personal capacity; BRENDA E. BERRYHILL, in her personal capacity; MELANIE PELLERIN, in her personal capacity; TIKA SMITH, in her personal capacity; BELINDA WILLIAMS, in her personal capacity; ORELL WILLIAMS, in his personal capacity; CYNTHIA COLEMAN, in her personal capacity; DOES 1 – 10 inclusive, | ) **BANE ACT.** ) ) **DEMAND FOR JURY TRIAL** ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## JURISDICTION

1.    Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 and California

Civil Code Section 52.1 to redress the deprivation by defendants, at all times herein acting

under color of state law, of rights secured to Plaintiffs under the United States Constitution,

including the First, Fourth, and Fourteenth Amendments, under federal law, including 42

U.S.C. Section 671(a)(16), and California Civil Code Section 52.1 where applicable.  This court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §1331.

**VENUE**

2.   Venue is proper in the District Court for the Central District of California pursuant to 28 U.S.C. §1391(e)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

**TORT CLAIM COMPLIANCE**

3.   Plaintiffs have exhausted their remedies, or otherwise complied with state law requirements for the filing of a Tort Claim Notice pursuant to California G.C. 905, and their claims for relief herein, have either been rejected, ignored, or deemed rejected as a matter of law.

**PLAINTIFF**

4.   Plaintiffs DARLENE FERGUSON ("MOTHER") AND RYAN K. ("MINOR") are individuals, who at all times relevant hereto resided in the County of Los Angeles, California, and the Mother is the joint legal and sole physical custodian of her child, the Minor.  The Minor was born in June 2001 and was nine years old at the time of the wrongful and warrantless removal from his only custodial parent, Mother, by the Defendants.

5.   The Minor and all other witnesses (the Minor's father Garland K., half-sibling K.G., and K.G.'s father Garrick G.) mentioned hereafter are being referred to by their initials to protect their identities, unless and until otherwise ordered by the court.  The full names of the above-mentioned individuals and their identifying information appears in the Defendant County (DCFS's) case files.

6.    During the Minor's entire life, prior to the involvement of the individually named defendants and entities identified and described herein, Mother provided for the Minor with adequate housing, clothing, food, medical insurance, education and extracurricular activities. The Mother was also the Minor's main emotional bond.

7.    Prior to the removal of the Minor by the defendants, Mother raised, nurtured, provided guidance, education and athletic opportunities, and cared for the Minor, and both Mother and Minor enjoyed the company, companionship, and society of each other, and all other benefits and obligations of their rights of familial association with each other.

**DEFENDANT COUNTY OF LOS ANGELES**

8.    Defendant COUNTY OF LOS ANGELES ("COUNTY") is a municipality in corporate form, organized and existing under the laws of the State of California, and has as an administrative subunits thereof, the DEPARTMENT OF CHILDREN AND FAMILY SERVICES (referred to as "DCFS" herein), is an administrative agency of the COUNTY and is organized and existing pursuant to the laws and policies of defendant COUNTY.

9.    DCFS is a COUNTY governmental agency organized and existing pursuant to the laws and policies of defendant COUNTY.  Plaintiffs allege that COUNTY and/or DCFS promulgated in written form, and/or encouraged, and/or permitted, policies, practices, customs, and/or procedures under which the individually named defendants, and Does 1 – 10, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or procedures, whether or not promulgated in written form, encouraged, or allowed to persist by defendant COUNTY, COUNTY condoned, ratified, and ignored without remediation the conduct of the social worker defendants pursuant to said policies, practices, customs, and procedures, as complained of herein.

10.   As the employer of social workers and their supervisors, COUNTY and/or DCFS had primary responsibility for the training, education, and supervision of social workers, emergency response workers, continuing care workers, dependency intake workers, placement workers, and all other DCFS personnel, and DCFS supervisors, and either did not train as specified herein, or did not adequately supervise it's employees.

11.   Plaintiff further alleges that COUNTY/DCFS failed to institute training, or adequately train/supervise employees situated such as the individually named defendants herein, regarding, among other things:

    a.   the existence, method of obtaining, and circumstances requiring use of protective custody warrants authorized under California state law;

    b.   the meaning, intent, and contours of the 4th and 14th Amendments to the U.S. Constitution as relevant in the context of the investigation of a child abuse referral and potential removal/detention of a child and/or children from his/her/their parents or guardians;

    c.   the recent/current court decisions, or an ongoing review of such court decisions, affecting the liabilities and immunities of government actors when interfering in a family in a manner which impinges on their rights of familial association;

    d.   the meaning and definition of "exigency" and the application of factual circumstances to the determination of whether or not exigency exists to a sufficient degree as would obviate the need for a protective custody warrant when removing  a child or children from his/her/their parents or guardians;

e. the law, circumstance, justification, and investigatory obligations for maintaining children in the custody of DCFS pending a detention hearing; and, but not limited to,

f. the emotional trauma and resulting symptoms for children removed from their parents and/or primary caregivers and the likelihood of life-long emotional harm;

12. Further, in regards to the creation and/or maintenance of a policy, practice, custom, usage and/or procedure, COUNTY/DCFS maintained, implemented, or maintains the following written and/or unwritten policies, practices, customs, and procedures, and/or repeatedly ratifies, condones, and authorizes adherence by social workers of COUNTY/DCFS to the following policies, practices, customs, usage and/or procedures:

a. the removal of children from their parents and/or guardians in the absence of an imminent risk of serious bodily injury without a warrant and in the absence of an imminent risk of serious bodily injury;

b. the continued detention of children prior to a detention hearing regardless of the lack of any risk of serious bodily injury;

c. the lack of any requirement or obligation, or sanction for a failure, to conduct further investigation into whether there is any justification under state law for continuing the detention of children removed from their parent(s) or primary caregiver(s) pending a detention hearing;

d. the warrantless removal of children who are not at imminent risk of serious bodily injury.

13.   Plaintiffs are informed and believe and thereon allege that the aforementioned lack of training, and/or inadequate training, as well as the maintenance of the aforesaid policies, practices, customs, and procedures, constitute a basis for governmental liability in this case pursuant to the *Monell* theory of liability, and hereby seek to hold COUNTY/DCFS individually liable and/or responsible in whole or in part for the conduct of the individual defendants and the damages naturally resulting therefrom.

14.   Plaintiffs hereby sue all agencies and departmental units of COUNTY specified hereinabove under the designation of COUNTY herein, and/or DCFS interchangeably.

15.   The actions and failures to act of each individually named defendant who is not an entity herein, are alleged in the alternative to have been conducted or failed to have been performed either in their individual capacities, or as employees of their respective employing entity defendants on behalf of such entity defendants and under color of state law.

## INDIVIDUAL COUNTY DEFENDANTS

16.   Defendants MICHELE LOYA-CHHABRA, in her personal capacity; XIOMARA FLORES-HOLGUIN; in her personal capacity;  BRENDA E. BERRYHILL, in her personal capacity; MELANIE PELLERIN, in her personal capacity; TIKA SMITH, in her personal capacity; BELINDA WILLIAMS, in her personal capacity; ORELL WILLIAMS, in his personal capacity; and CYNTHIA COLEMAN, in her personal capacity; whose acts as alleged herein were performed in their personal capacity, under color of state law as employees of COUNTY, were at all times material hereto, upon Plaintiffs' information and belief, a social worker and/or supervising social worker employed by COUNTY/DCFS.

17.   Plaintiffs may from time to time herein, refer to all COUNTY employee defendants noted hereinabove, collectively as "COUNTY DEFENDANTS."

6

## GENERAL ALLEGATIONS

18.  Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law.  (*Hafer v. Melo* (U.S. 1991) 502 U.S. 21, 25.)  Thus, on the merits, to establish *personal* liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.  (*Id.* at 25.)  The plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom."  (*Id.* at 25.)

19.  In contrast, official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent, i.e. suits against state officials in their official capacity therefore would be treated as suits against the State.  (*Id.* at 25.)  Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.  (*Id.* at 25.)  Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's "policy or custom" must have played a part in the violation of law.  (*Id.* at 25.)

20.  California Civil Code Section 52.1 allows a plaintiff to file a lawsuit against those who interfere or attempt to interfere by "threats, intimidation or coercion" with the plaintiff's exercise or enjoyment of any state or federal constitutional or legal right.  (Cal. Civ. Code §52.1(a)-(b).)

21.  The Defendants wrongful actions and warrantless removal of the Minor from the Mother by threat, intimidation or coercion, of forceful removal into foster care interfered with the Plaintiffs family in a manner which impinges on the Plaintiffs rights of familial association protected under the state and federal constitutions and laws.

## WARANTLESS REMOVAL OF THE MINOR FROM THE MOTHER'S CUSTODY

22.  On August 14, 2010, Mother was involved in a vehicular incident, with the Minor's two years old half-sibling K.G. seated in the back passenger seat.  The incident involved Mother bumping her car into the car of her ex-boyfriend G.G., K.G.'s father, who told the police initially that she was following him, but also said that Mother bumped into his vehicle by accident when attempting to manually roll down her window to tell him something.  G.G. had moved out of the family home in April 2010.  Mother was arrested and charged with force with a deadly weapon (car) and child endangerment, however, all the charges were dropped and she was convicted of a misdemeanor assault and given three-year summary probation.

23.  Mother had no other criminal arrests, charges, or convictions.

24.  The Minor was neither present at the scene nor involved in the incident.

25.  When mother was arrested, she served 10 days in jail.  During that time, she placed the Minor in the care of the maternal grandmother, with whom the child was strongly bonded. The arresting police officer placed the Minor's half-sibling with her father, G.G., who in turn placed her with the maternal grandmother.  The arresting police officer made a child abuse referral to the DCFS, which did not involved or mention the Minor.

26.  On August 17, 2010, social worker CHHABRA made contact with G.G., who told her that he had moved out of the family home in April 2010.  As to the incident, he said that he believed that mother accidentally bumped into his vehicle while trying to manually roll down her window.  G.G. said that it was all a big misunderstanding and that mother was a good mother to her children.

27.  On August 17, 2010, social worker CHHABRA made contact with the maternal grandmother and verified that the Minor, who was then nine years old, was in her care.

CHHABRA also made contact with maternal aunt, who was committed to helping out in any way possible.

28.   CHHABRA demanded that the maternal grandmother and aunt bring the Minor and K.G. to the DCFS's office to be interviewed and for the relatives to be livescanned.   CHHABRA threatened that she would remove the children from the maternal grandmother's care and place them in foster care unless the children were brought in.

29.   Out of fear that the children would be removed and placed in foster care, the maternal grandmother and aunt went to the DCFS's office with the children on August 20, 2010.

30.   On August 20, 2010, the children were taken in for questioning in a separate room outside of the maternal aunt's and grandmother's presence.   The maternal grandmother's and aunt's criminal and child abuse records check was negative; they had no history.

31.   K.G. was too young to make a meaningful statement.

32.   The Minor denied witnessing any domestic violence or being abused in any way, said that his mother took great care of him, that he loved his mother very much, and that he wanted to return to her care and custody.   About his father, G.K., the Minor said that he had not seen his father in years, since he was six years old, and that the father was not involved with him.

33.   Both children appeared healthy, happy, without any marks or bruises indicative of abuse.

34.   Pursuant to a family law order, Mother had joint legal and sole physical custody of the Minor and father G.G. was allowed biweekly visitation and was ordered to pay child support, but had not paid since January 2010.

35.   Despite the fact that mother had placed the Minor with the maternal grandmother, an appropriate placement option, during her incarceration and the Minor denied all kinds of abuse and neglect and there were no signs of such, on August 20, 2010, CHHABRA and her

supervising social worker FLORES-HOLGUIN, took the Minor (and K.G.) into protective custody without a warrant and then placed them back with the maternal grandmother (the same placement chosen by mother) on the sham grounds of caretaker absence (mother's incarceration) and emotional abuse.

36.   CHHABRA AND FLORES-HOLGUIN subsequently filed a dependency petition pursuant to the Welfare and Institutions Code section 300, subdivisions (b), (d), and (g).  As to the Minor, the Defendants recommended that the juvenile court sustain the petition and order the Minor removed from his custodial parent Mother and be placed with his non-custodial parent G.G.

37.   When mother was released from jail, the social workers and/or supervising workers MICHELE LOYA-CHHABRA; XIOMARA FLORES-HOLGUIN; BRENDA E. BERRYHILL; MELANIE PELLERIN; TIKA SMITH; BELINDA WILLIAMS; ORELL WILLIAMS; AND CYNTHIA COLEMAN refused and failed to observe her two-bedroom home to determine if the Minor could be placed with the Mother nor did they assess mother as a placement option for the Minor.  Mother was the Minor's sole custodial parent until the DCFS's involvement and removal.  Mother had adequate housing, medical insurance, and income to support the Minor.  Even the DCFS's social workers observed that the Minor was strongly bonded to his Mother and repeatedly told them he wanted to return to the Mother's care and custody.

38.  During the dependency proceedings, the juvenile court followed the DCFS's recommendations, placed the Minor with his father, G.G., and terminated jurisdiction with a family law order granting G.G. sole legal and physical custody and monitored visitation to mother at G.G.'s discretion.  As to K.G., the court took jurisdiction of the child and offered

mother reunification services, which mother successfully completed and regained custody of K.G. within six months.

39. For about a year and a half while the Minor remained in father's physical custody, the Minor suffered severe neglect in the hands of his father. The Minor slept on the floor in the father's home, was medically neglected by his father when had an ear infection (mother provided the medical care), had extensive absences from school and father was referred to the District Attorney's office for that reason, was left at school for about two hours after the school closed, was constantly left at the home of the father's girlfriend's mother, was failing his classes and the school year. The minor was no longer involved in the many sports mother had him enrolled.

40. The Minor was also not allowed to visit his mother and maternal family, with whom he was strongly bonded, especially his mother and K.G., and verbalized his desire to return to mother's care to his teacher, mother, and in a letter to the family court.

41. To visit her child, the Mother volunteered at his school, where she had lunch with him and helped him with his homework. She also bought him clothes, shoes, school supplies, learning materials, and books.

42. Mother fought to regain custody of the Minor in the California Appellate Courts and Family Court and finally regained custody of the Minor in mid-2012.

43. In Mother's first appeal, the Court of Appeal reversed the juvenile court's visitation order, which had limited mother's visitation to take place in a monitored setting per the Minor's father's discretion. On remand, Mother filed a modification petition requesting custody of the Minor, with evidence showing how father had neglected the Minor. The DCFS too recommended that the Minor be returned to Mother's custody or at least Mother be given

equally custody rights.  When the juvenile court summarily denied Mother's petition, the Court of Appeal reversed in a published decision with instructions for the juvenile court to hear mother's petition.  (*In re Ryan K.* (2012) 207 Cal.App.4th 591.)

## DAMAGES

44.  The actions of the social workers and/or supervising workers MICHELE LOYA-CHHABRA; XIOMARA FLORES-HOLGUIN;  BRENDA E. BERRYHILL; MELANIE PELLERIN; TIKA SMITH; BELINDA WILLIAMS; ORELL WILLIAMS; AND CYNTHIA COLEMAN have caused extreme emotional distress to the Plaintiffs.

45.  As a result of the conduct of Defendants, Plaintiffs suffered severe emotional distress, anxiety and general damage to their psyche, to such an extent as to cause physical manifestations of pain and symptoms of nausea and severe depression, including but not limited to sleeplessness, headaches, rapid weight loss, fatigue, loss of appetite, malaise, irritability, inability to focus, a generalized fear of authority figures and social workers and law enforcement officers in particular.  Plaintiffs have also suffered damages in the form of medical and/or therapy costs, and future medical and/or therapy costs.

46.  The Plaintiffs have developed an abiding fear of law enforcement and/or Child Protective Service workers, and the vehicles and attire on others that remind them of the law enforcement officers and social workers who invaded their lives and separating them and causing much emotional trauma and resulting in the minor suffering severe neglect.

47.  The Mother has incurred expenses and fees in the family court matter that were unnecessarily caused by the actions of the Defendants, in an amount to be proven at time of trial.

48.  Plaintiffs seeks an award of exemplary (punitive) damages as allowed under federal law and pursuant to California Civil Code Section 3294 against the individually-named defendants in their personal capacities to make an example of and punish defendants, and in the hope of deterring future conduct of a similar nature.

### 1st CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS – 42 U.S.C. 1983

(Plaintiffs vs. CHHABRA; FLORES-HOLGUIN; BERRYHILL; PELLERIN; SMITH; B. WILLIAMS; O. WILLIAMS; and COLEMAN - Removal)

49.  Plaintiffs re-allege and incorporate paragraphs 1 through 48, inclusive, as though fully set forth at this point, as they relate to a Cause of Action for a violation of their civil rights under the Fourteenth Amendment to the United States Constitution, with regard to the violation of their rights of familial association with one another occasioned by the removal of the Minor from the Mother's care and custody in the absence of any exigency and/or court order and/or warrant.

50.  Plaintiffs are informed and believe and thereon allege that the right to familial association guaranteed under the Fourteenth Amendment is "clearly established" such that a reasonable social worker or police officer in Defendants' situation would know it is unlawful to remove a child from the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so. In addition, there is a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government such that a reasonable social worker Defendants' situation would know it is unlawful to lie, fabricate evidence, and/or suppress exculpatory evidence.

51.  Without a warrant, and in the absence of any exigent circumstances, Defendants and each of them, interrupted and impaired the familial rights of the Mother and the Minor, individually and jointly, by unlawfully removing the Minor from his only custodial parent and emotional backbone, Mother's custody and care.

52.  DEFENDANTS, and each of them, were at all relevant times acting under color of law when they acted, agreed, and/or conspired to unlawfully remove, detain, question, threaten, and/or examine the Minor.  In doing the things alleged hereinabove, Defendants, and each of them, did so without proper justification or authority, and without probable cause, exigency, or court order.  (See *Mabe v. County of San Bernadino* (2001) 237 F.3d 1101).  Further, DEFENDANTS' actions were taken with deliberate indifference to Plaintiffs' due process rights and/or rights to uninterrupted familial association and/or privacy.

53.  DEFENDANTS, and each of them, maliciously conspired to violate the civil rights of the Plaintiffs, including violation of the Plaintiffs' rights found in the Fourteenth Amendment of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain, the Minor from the care, custody, and control of his Mother without proper or just cause and/or authority; by subjecting the Minor to examinations without consent, authority, or the presence of his mother; by threats, intimidation or coercion that the Minor would be removed from the appropriate temporary relative placement, maternal grandmother, and placed in foster care to obtain evidence and testimony; and by maliciously falsifying evidence, and presenting fabricated evidence to a court of law, and maliciously refusing to provide exculpatory evidence during the pendency of court actions all in violation of California Government Code §820.21, and violating the Constitutional rights of Plaintiffs.

14

54.   By these actions, DEFENDANTS, and each of them, interfered and/or attempted to interfere with Plaintiffs' constitutional rights to familial association under the Fourteenth Amendment, as well as those rights under applicable California Law rising to the level of a constitutionally protected right.

55.   As the direct and proximate result of these DEFENDANTS' actions, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.  Plaintiffs have also incurred, and will continue to incur, attorney's fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

56.   Each and every one of the Social Worker Defendants, CHHABRA to DOES 1 through 50, Inclusive, and each of them, acted with malice and with the intent to cause injury to Plaintiffs, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner.  Therefore, Plaintiffs are entitled to an award of punitive damages against the individual Defendants in their personal capacities.

57.   With regard to the County of Los Angeles, Plaintiffs are informed and believe and on such basis alleges that the County of Los Angeles has a policy of indemnifying its social workers against punitive damages awards.  Thus, Plaintiffs are informed and believe and on such basis alleges that County of Los Angeles approves of the misconduct of its social service workers as a matter of policy.

## 2nd CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS BY "THREATS, INTIMIDATION OR COERCION" - California Civil Code Section 52.1

(Plaintiffs vs. CHHABRA; FLORES-HOLGUIN; BERRYHILL; PELLERIN; SMITH; B. WILLIAMS; O. WILLIAMS; and COLEMAN - Removal)

58.   Plaintiffs re-allege and incorporate paragraphs 1 through 57, inclusive, as though fully set forth at this point, as they relate to a Cause of Action for a violation of their civil rights under the Fourteenth Amendment to the United States Constitution by threat, intimidation or coercion pursuant to California Civil Code Section 52.1, with regard to the violation of their rights of familial association with one another occasioned by the removal of the Minor from the Mother's care and custody in the absence of any exigency and/or court order and/or warrant.

## 3rd CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Plaintiffs vs. CHHABRA; FLORES-HOLGUIN; BERRYHILL; PELLERIN; SMITH; B. WILLIAMS; O. WILLIAMS; and COLEMAN)

59.   Plaintiffs re-allege and incorporate paragraphs 1 through 58, inclusive, as though fully set forth at this point, as they relate to a Cause of Action for the intentional infliction of emotional distress upon Plaintiffs by DEFENDANTS.

60.   The actions of these named DEFENDANTS in planning and executing the warrantless removal of the Minor from Mother's care and custody and then giving the Minor to the father whom the Minor had not seen for years and who had failed to pay child support for almost a year were both extreme and outrageous.  Moreover, the offending conduct was either intended

to cause severe emotional distress or was undertaken with reckless disregard for the likelihood of causing the Plaintiffs severe emotional distress, and did cause Plaintiffs severe emotional distress.

61.  The DEFENDANTS actions in preparing reports falsifying and/or misrepresenting facts and omitting exculpatory facts to the proposition that Mother did not arrange for the Minor's placement during her temporary 10-day jail time and left him without a caretaker and had caused him emotional harm or placed him at risk of harm were all extreme and outrageous actions either intended to cause severe emotional distress or undertaken with reckless disregard for the likelihood of causing the Plaintiffs severe emotional distress, and did cause both Plaintiffs severe emotional distress.

62.  The DEFENDANTS actions in threatening the Minor's removal and placement in foster care to coerce the maternal grandmother into bringing the Minor to the DEFENDANT'S office at which point the Minor was examined separate from his custodial Mother and without her consent were all extreme and outrageous actions either intended to cause severe emotional distress or undertaken with reckless disregard for the likelihood of causing the Plaintiffs severe emotional distress, and did cause both Plaintiffs severe emotional distress.

63.  As a direct and proximate cause of the aforementioned conduct Plaintiffs sustained severe emotional damages as according to proof at trial.

64.  Each and every one of the Social Worker Defendants and DOES 1 through 50, Inclusive, and each of them, acted with malice and with the intent to cause injury to Plaintiffs, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner.  Therefore, Plaintiffs are entitled to an award of punitive damages against the individual Defendants in their personal capacities.

## MONELL CAUSE OF ACTION AGAINST THEN MUNICIPAL DEFENDANTS

65. Plaintiffs re-allege and incorporate paragraphs 1 through 64, inclusive, as though fully set forth herein.

66. Defendant COUNTY, including through their respective entity DCFS, established and/or followed policies, procedures, customs, usages and/or practices (hereinafter referred to collectively as "policy" or "policies") which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including those arising under the Fourth and Fourteenth Amendments, by and through, but not limited to, the following policies, practices, customs and/or procedures:

a. the policy of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious physical injury), court order and/or consent;

b. the policy of removing children from their family and their homes without first obtaining a warrant or other court order when no exigency exists;

c. the policy of examining children without exigency, need, or proper court order, and without the presence and/or consent of their parent or guardian;

d. the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated.

e. the policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the Court, causing an interference with the Plaintiff's rights, including those as to familial relations; and

f. by acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees

and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

g.    by acting with deliberate indifference in implementing a policy of inadequate supervision, and/or by failing to adequately supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

h.    The policy of making false allegations in a Juvenile Dependency Petitions, i.e. alleging that a parent has failed to protect a child under Welfare and Institutions Code §300(b), where there is no evidentiary basis to support the charge.  (Plaintiffs reserve their right to amend this pleading as more information becomes available).

67. COUNTY breached its respective duties and obligations to Plaintiffs by, including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards with deliberate indifference; and by knowingly, or with deliberate indifference, permitting the DEFENDANTS, and DOES 1 through 50, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged.

68. DEFENDANTS knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies and acts as alleged herein, and that such

breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies, practices, customs and procedures were the moving force behind the constitutional violations alleged herein above.

69.   These actions, and/or inactions, of DEFENDANTS - and each of them - are the direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial.  In addition, Plaintiffs have incurred, and will continue to incur, attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. §1988 and California Civil Code Section 52.1, to an extent and in an amount subject to proof at – or after -- trial.

**WHEREFORE, Plaintiffs respectfully requests that this Court:**

1.)   Award to Plaintiffs general, special and compensatory damages in an amount to be proven at trial.

2.)   Award to Plaintiffs punitive damages against all individual non-entity defendants in their personal capacities, and each of them;

3.)   Award to Plaintiffs statutory damages and/or attorney fees against all defendants as allowed pursuant to 42 U.S.C. §1988, California Civil Code Sections 52.1, and California Code of Civil Procedure 1021.5.

4.)   Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Date:  August 9, 2012                                    The Law Office of Liana Serobian, Esq.

                                                               Liana Serobian, Esq.
                                                               Attorney for Plaintiffs

20

### DEMAND FOR JURY TRIAL

Pursuant to Rules 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

hereby demand trial by jury.

Date:  August 9, 2012                                          The Law Office of Liana Serobian, Esq.

                                                                        Liana Serobian, Esq.
                                                                        Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV12- 6865 JAK (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Darlene Ferguson and Ryan K., individuals, | COUNTY OF LOS ANGELES; MICHELE LOYA-CHHABRA, XIOMARA FLORES-HOLGUIN, BRENDA E. BERRYHILL, MELANIE PELLERIN, TIKA SMITH, BELINDA WILLIAMS, ORELL WILLIAMS, C. COLEMAN, DOES 1-50 INCLUSIVE |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| LIANA SEROBIAN, ESQ. CSB 235466<br>100 North Brand Blvd., Suite 600, Glendale, CA 91203<br>(818) 539-2249 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ To be proven at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C §1983

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | **IMMIGRATION** | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☒ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV12-06865

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☒   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  August 9, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |