UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV12-06865 JAK (Ex) | Date | July 25, 2013 |
|---|---|---|---|
| Title | Darlene Ferguson, et al. v. County of Los Angeles, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| R. Neal for Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFFS' FIRST APPLICATION FOR A TEMPORARY RESTRAINING ORDER (DKT. 29)**

### I. Background

Plaintiffs Darlene Ferguson and Ryan K. ("Plaintiffs") brought this action against the County of Los Angeles and eight named employees of the Department of Children and Family Services ("DCFS") (collectively "Defendants"). Plaintiffs advance civil rights violations stemming from the alleged wrongful removal of Ms. Ferguson's son, Ryan K., from her custody. Dkt. 1. Plaintiffs filed their Complaint on August 9, 2012. *Id.* Defendants were not served until January 2013. They answered on February 5, 2013. Dkt. 17.

On July 9, 2013, a referral was made to the DCFS Child Abuse Hotline concerning suspected abuse and/or neglect of minors Ryan K. and Kaitlyn G, Ms. Ferguson's children. Dkt. 34, p. 7. On July 10, 2013, a police officer went to Plaintiffs' residence at the request of DCFS to investigate the referral, which Plaintiff alleges concerned purported domestic violence between Ms. Ferguson and Garrick G., her former boyfriend and Kaitlyn G.'s father. Dkt. 29, p. 3. On July 16, 2013, police again went to Plaintiffs' residence to investigate. *Id.* Police determined on both occasions that there was no danger or violence at Plaintiffs' home. *Id.* It was also reported that Garrick G. no longer lives in California, but has resided in North Carolina since some time in 2012. *Id.* p. 3-4. Plaintiffs believe that Defendants caused police to come to their home, not for legitimate reasons, but in retaliation for Plaintiffs' filing of this action. *Id.* p. 5. As a result, Plaintiffs bring this motion (the "Motion") seeking a temporary restraining order ("TRO") preventing DCFS from sending the police to investigate reports of child abuse or domestic violence at their residence. *Id.*

### II. Evidentiary Objections

Defendants filed evidentiary objections to some of the evidence proffered by Plaintiffs in support of this Motion. Dkt. 34-2, 34-3, 34-4; Dkt. 37. The Court sustains all of these objections. In general, there is no foundation for the evidence that is proffered, much of which is speculative, with respect to the role of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-06865 JAK (Ex) | Date | July 25, 2013 |
|---|---|---|---|
| Title | Darlene Ferguson, et al. v. County of Los Angeles, et al. | | |

Defendants in causing, or manufacturing, the referrals to the DCFS Child Abuse Hotline.

**III.    Analysis**

    **A.    Legal Standard**

A request for a TRO must, in general, meet the same standard applicable to a request for a preliminary injunction, with the additional requirement that, absent immediate injunctive relief, the moving party will suffer irreparable injury. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). In considering whether to issue a TRO, the Court examines four factors: (1) the likelihood of the plaintiff's success on the merits; (2) the threat of irreparable harm to the plaintiff if the order is not issued; (3) the relative balance of harms between the parties; and (4) the impact on the public interest. *See Alaska ex rel. Yukon Flats School District v. Native Village of Venetie*, 856 F.2d 1384, 1388 (9th Cir. 1988). The Court considers these factors in this sequence.

    **B.    Application**

        1.    Likelihood of Success on the Merits

The underlying claims in this action are premised on the allegation that Defendants wrongfully removed Ryan K. from Ms. Ferguson's custody. Plaintiffs' Complaint is sufficiently well pleaded to demonstrate a possibility of success on the merits. However, whether Ryan K. was previously wrongfully removed from Ms. Ferguson's custody, and whether that gives rise to corresponding civil rights claims, bears little, if any, relationship to the current TRO application. Thus, even if Plaintiffs ultimately succeed on their present claims, they will not be entitled to an injunction preventing DCFS from investigating future reports of child abuse or domestic violence. DCFS has a statutory mandate that requires that it investigate allegations of child abuse and cross-report those allegations to law enforcement. *See* Cal. Penal Code § 11166(j); California Department of Social Services Manual of Policies and Procedures, Ch 31-100. In addition, Plaintiffs have presented no evidence that the reporting party, whose call apparently led to the police visits to their residence, was one of the Defendants or that one of them orchestrated the call.[1] Because Plaintiffs have the burden of establishing that the circumstances warrant the issuance of the TRO, they have not shown that this factor supports the issuance of a TRO.

        2.    Irreparable Harm

Plaintiffs allege that they have suffered, and will continue to suffer, emotional harm from police visits to their home. Thus, they argue that will continue to suffer from fear and embarrassment. Dkt. 29, p. 4-5. In addition, Plaintiffs allege that neighbors now fear for their own safety because of the police activity and associate Plaintiffs with this fear. As a result, Plaintiffs claim that certain of their neighbors no longer allow their children to associate with Plaintiffs. *Id.* Plaintiffs also argue that they fear the Defendants are looking for a reason to have Ferguson lose custody of the minor children, and that should such a separation

---

1. Defendants state that information about the identity of a caller is confidential and not discoverable. The Court does not reach that issue in this Order. Dkt. 34, p. 9; Dkt. 34-1, p. 1.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV12-06865 JAK (Ex) | Date | July 25, 2013 |
| Title | Darlene Ferguson, et al. v. County of Los Angeles, et al. | | |

occur, irreparable harm to Ms. Ferguson and to both her children would result. Dkt. 36, p. 4.

Emotional harm is a cognizable form of injury. However, Plaintiffs have not shown that they will suffer imminent harm if the TRO is not issued. Whether or not DCFS will receive reports of any future allegations of child abuse at Plaintiffs' residence is speculative. Moreover, there is a process that must be followed prior to any custody order being made. That there could be another police response to a claimed call to the Child Abuse Hotline would not, by itself, cause a change in custody order. Evidence warranting such a change would have to be presented. Therefore, Plaintiffs have not shown that this factor weighs in favor of a TRO.

### 3. Balancing of Hardships

A balancing of the hardships in this case clearly weighs against granting a TRO. Although Plaintiffs could suffer some level of psychological harm as a result of continued visits from police, the potential harm from granting the TRO is significantly greater. The statutory requirements that DCFS investigate any and all allegations of child abuse or neglect, and cross-report such allegations to law enforcement in certain situations, are in place for an extremely important purpose: protecting children from harm. The possible harm that could result from granting the TRO -- the inability of DCFS to send police to investigate what could later be established as accurate reports of serious risk of harm to Ferguson's minor children -- is much greater than the potential for emotional distress resulting from additional police visits. Further, there is no evidence that future visits will occur as the result of false reporting. Therefore, a balancing of the harms weighs against granting the TRO.

### 4. Public Interest

The public has a strong interest in protecting the welfare of all children. DCFS's duty to investigate and cross-report calls with respect to alleged abuse or endangerment of children serves that interest by ensuring that DCFS takes reasonable steps to protect minor children. Such risks can range from minor injuries to grave physical harm. There is also a public interest in preventing false reporting and unnecessary visits by police personnel. However, there is not sufficient evidence presented to support the need for a TRO to advance this public interest. Therefore, the public interest weighs against granting the TRO.

### IV. Conclusion

For the foregoing reasons, the Court DENIES the Motion.

**IT IS SO ORDERED.**

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | RGN/ak |  |